EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Unión General de Trabajadores (UGT) | Certiorari |
| --- | --- |
| Recurrido | 2019 TSPR 126 |
| v. | |
| Centro Médico del Turabo, Inc. h/n/c Hima San Pablo Caguas | 202 DPR ____ |
| Peticionario | |

Número del Caso: CC-2017-0794

Fecha: 17 de julio de 2019

Tribunal de Apelaciones:

    Región Judicial de San Juan-Caguas

Abogada de la parte peticionaria:

    Lcda. Gianna Robles Vega

Abogado de la parte recurrida:

    Lcdo. Edwin Rivera Cintrón

Materia: Derecho Laboral - Los enfermeros graduados de un programa de grado asociado se clasifican como ¨profesionales¨, exentos del pago de horas extras.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Unión General de Trabajadores
(UGT)

       Recurrido

         v.            CC-2017-0794

Centro Médico del Turabo,
Inc. h/n/c Hima San Pablo
Caguas

       Peticionario


Opinión del Tribunal emitida por el Juez Asociado señor Martínez Torres.


En San Juan, Puerto Rico, a 17 de julio de 2019.

La controversia que tenemos ante nuestra consideración requiere que determinemos si los enfermeros graduados de un programa de grado asociado en Puerto Rico tienen derecho a recibir el pago de horas extras. Por los fundamentos que exponemos a continuación, resolvemos que no.

I

La Unión General de Trabajadores (UGT) presentó una solicitud de arbitraje ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo (Negociado) el 11 de marzo de 2015, en representación de los enfermeros

graduados de grado asociado que forman parte de la unidad apropiada de profesionales del Hospital HIMA San Pablo Caguas y que trabajan turnos de 12 horas. Como parte del proceso de arbitraje, las partes estipularon que: (1) los enfermeros estaban cubiertos por un convenio colectivo que firmó el hospital con la UGT, vigente del 29 de abril de 2011 hasta el 28 de abril de 2015 y que fue extendido; (2) la UGT era la representante exclusiva de los empleados del hospital HIMA; (3) todos los querellantes tienen como mínimo un Grado Asociado en Enfermería; (4) es requisito previo obtener una licencia para poder ejercer la profesión de enfermería en Puerto Rico y que para obtenerla deben aprobar el examen administrado por la Junta Examinadora de Enfermeros y Enfermeras de Puerto Rico; (5) el Colegio de Profesionales de la Enfermería en Puerto Rico agrupa a los enfermeros graduados de grado asociado y de bachillerato, y que (6) los enfermeros graduados de grado asociado deben tomar cursos de educación jurídica continua. Además, estipularon una serie de currículos de programas de grado asociado y de bachillerato en enfermería.

El Negociado emitió un laudo de arbitraje el 13 de enero de 2017. Del laudo surge que las partes no lograron llegar a un acuerdo de sumisión, por lo que cada parte presentó su propio proyecto de sumisión. En esencia, ambos proyectos solicitaron al árbitro que determinara conforme a derecho si procede el pago de horas extras a los

enfermeros graduados de un programa de grado asociado, conforme a la Ley Núm. 379 del 15 de mayo de 1948, según enmendada, 29 LPRA sec. 271 et seq. El árbitro concluyó que los enfermeros graduados de un programa de grado asociado son considerados "profesionales", por lo que no les corresponde el pago de horas extras. Ante esto, la UGT presentó un recurso de revisión judicial en el Tribunal de Primera Instancia en el cual indicó que el árbitro erró al concluir que los enfermeros graduados de un programa de grado asociado son "profesionales". El foro primario emitió una sentencia en la que proveyó no ha lugar al recurso de revisión, ya que concluyó que el dictamen del árbitro no fue contrario a derecho ni se demostró que hubo prejuicio de parte del árbitro al emitir el laudo.

Inconforme con este dictamen, la UGT presentó una petición de certiorari ante el Tribunal de Apelaciones en la que planteó que el foro primario erró al confirmar el laudo de arbitraje sin entrar en los méritos de la controversia. El foro apelativo intermedio emitió una sentencia mediante la que revocó al foro primario. Concluyó que, de acuerdo con el derecho aplicable, los enfermeros graduados con grado asociado no son "profesionales", por lo que tienen derecho a recibir el pago de horas extras. Para llegar a esta conclusión, el Tribunal de Apelaciones indicó que examinó varios currículos de grados asociados en enfermería, que las partes estipularon, y encontró que no se satisfacían los

requisitos de conocimientos que se requieren a los "profesionales", conforme a lo que disponen los reglamentos aplicables. Además, indicó que los cursos eran cortos.

Insatisfecho con el dictamen del foro apelativo intermedio, el Hospital HIMA San Pablo acudió ante nos mediante una petición de certiorari. En esencia, el Hospital HIMA San Pablo planteó que el Tribunal de Apelaciones erró al resolver el caso utilizando una ley derogada y al revocar el laudo de arbitraje, ya que este se dictó conforme a Derecho. Asimismo, planteó que el Tribunal de Apelaciones erró al concluir que los enfermeros graduados con grado asociado no eran "profesionales". Evaluada la comparecencia de ambas partes, pasamos a resolver la controversia que tenemos ante nuestra consideración.

II

A

El Congreso de Estados Unidos aprobó la *Fair Labor Standards Act* (FLSA) con el propósito de mejorar las condiciones de vida de los trabajadores. Esta ley busca limitar que los trabajadores no laboren más de cuarenta horas a la semana, a menos que se les paguen las horas adicionales trabajadas en una cantidad no menor a tiempo y medio de lo que cobran por hora regularmente. Véase 29 USC secs. 202 y 207. Cabe destacar que los hospitales están cubiertos expresamente por la ley, ya que la definición de

"compañía dedicada al comercio o a la producción de bienes para el comercio" ("*enterprise engaged in commerce or in the production of goods for commerce*") incluye expresamente a los hospitales. Fair Labor Standards Act, 29 USC sec. 203. Por otro lado, la FLSA exime de su aplicación a los "profesionales", entre otros. *Fair Labor Standards Act*, 29 USC sec. 213.

El Código de Reglamentos Federales (Code of Federal Regulations) requiere, en primer lugar, que para que un trabajador sea considerado como "profesional" debe recibir una compensación no menor de $455 semanales. 29 CFR sec. 541.300(a).[1] En segundo lugar, las funciones principales del trabajador deben requerirle conocimientos avanzados en un campo de la ciencia o que estos sean adquiridos por medio de un curso prolongado de instrucción intelectual especializada. 29 CFR sec. 541.300(b).

Por otro lado, dentro de los grupos que clasifica el reglamento federal como "profesionales" se encuentran los profesionales instruidos ("learned professionals"). 29 CFR sec. 541.301(a). Estos tienen como tarea principal realizar trabajos que requieren conocimiento avanzado, el cual debe ser en el área de las ciencias o aprendizaje, adquirido a través de un curso prolongado. Íd. El reglamento define el

---

[1] En 2016 se enmendó esta sección y cambió el requisito de $455 semanales a una medida comparativa con otros empleados.

concepto "trabajo que requiere conocimiento avanzado" ("*work requiring advanced knowledge*") como aquel que es mayormente intelectual y que requiere el ejercicio constante de la discreción y la emisión de juicios. 29 CFR sec. 541.301(b). Este trabajo se diferencia del trabajo de rutina, manual o mecánica y no puede obtenerse a nivel de escuela superior. Íd. Al referirse a trabajos en áreas de la ciencia y el aprendizaje incluye "profesionales" relacionados con la medicina y las ciencias biológicas, entre otras. 29 CFR sec. 541.301(c). Finalmente, en lo pertinente a esta controversia, el requisito del curso prolongado busca restringir esta excepción a aquellas personas, que como prerequisito para poder practicar esa profesión, tienen que tomar cursos especializados. 29 CFR sec. 541.301(d). Del mismo reglamento surge que los enfermeros que tienen licencias otorgadas por el estado para poder practicar la profesión generalmente cumplen con los requisitos reseñados anteriormente y están exentos. 29 CFR sec. 541. 301 (e)(2). Cabe destacar que los tribunales en Estados Unidos han utilizado estos reglamentos para concluir que los enfermeros son "profesionales". Véanse Fazekas v. Cleveland Clinic Found. Health Care Ventures, Inc., 204 F.3d 673 (6th Cir. 2000); Reive v. Coventry Health Care, Inc., 870 F. Supp. 2d 856 (C.D. Cal. 2012).

En Puerto Rico, la Constitución incluye una disposición que indica que la jornada de trabajo no debe

exceder ocho horas y que los trabajadores solo pueden laborar en exceso de ese límite de horas cuando se les compensa con una cantidad no menor de tiempo y medio del salario ordinario por las horas extras que trabajen. Art. II, Sec. 6, Const. PR, LPRA, Tomo 1. Además, la legislatura adoptó la Ley Núm. 379 del 15 de mayo de 1948, según enmendada, supra, la cual establece que los trabajadores podrán trabajar más de ocho horas al día, si por cada hora extra trabajada, se les paga tiempo y medio del salario que devengan por hora. Arts. 3 y 5 de la Ley 379 del 15 de mayo de 1948, según enmendada, 29 LPRA secs. 272 y 274. Esta ley incluye hospitales y exime del pago de horas extras a los "profesionales". Arts. 16 y 19 de la Ley 379 del 15 de mayo de 1948, 29 LPRA secs. 285 y 288.

Asimismo, la ley autoriza que se aprueben reglamentos que definan el término "profesional". Íd. Cabe destacar que el Reglamento Núm. 7082 del Departamento del Trabajo, del 18 de enero de 2006, que define el término "profesional" no aplica a la controversia antes mencionada porque, de acuerdo con el Art. III, este reglamento no aplica en las controversias cobijadas bajo la Ley FLSA. Sin embargo, es importante tener en cuenta la definición de "profesional" que adopta, ya que es similar a la del reglamento federal antes citado.

En Santiago v. CORCO, 114 DPR 267 (1983), nos enfrentamos a una controversia similar a la de este caso. Evaluamos si una enfermera graduada del programa de tres

años del Hospital del Distrito de Aguadilla era "profesional". En aquella ocasión analizamos la definición de "profesional" en el Reglamento Núm. 1266 de la Junta de Salario Mínimo del 4 de agosto de 1969, segunda revisión, que era el que estaba vigente en ese momento, y concluimos que la enfermera del caso era "profesional". Consideramos la preparación académica de la enfermera, dónde se graduó, los cursos de educación continua que había tomado y que mantenía vigente su licencia. Íd., pág. 271. Además, concluimos que el conocimiento adquirido era utilizado como parte de las labores que realizó. Íd. De esta forma, determinamos que la enfermera era "profesional" y por ello estaba exenta de la aplicación de la Ley de Salario Mínimo. Así pues, no procedía el pago de horas extras. Íd.

B

Conforme a lo anterior, procedemos a analizar si los enfermeros graduados de un programa de grado asociado se clasifican como "profesionales" a la luz del derecho aplicable. En primer lugar, el reglamento federal requiere que para que se considere un profesional la compensación que recibe el enfermero no puede ser menor de $455 semanales. El Art. 29, Sec. 3(D) del Convenio Colectivo suscrito entre las partes dispone que el salario de los enfermeros con grado asociado que trabajan turnos de doce horas es de sobre dos mil dólares mensuales. Además, del Art. 15 del Convenio Colectivo surge que estos enfermeros reciben un incentivo adicional a su salario de entre $200

a $250. Por tanto, de conformidad con lo anterior, los enfermeros de esta controversia cumplen con el primer requisito, pues reciben una compensación no menor de $455 semanales.

Asimismo, el reglamento federal requiere que examinemos si las funciones principales que realizan los enfermeros requieren conocimientos avanzados en un campo de la ciencia o que sean adquiridos por medio de un curso prolongado de instrucción intelectual especializada. Como mencionamos, las partes estipularon los currículos académicos de los enfermeros. Un examen de estos documentos demuestra que los enfermeros toman cursos generales de ciencia como microbiología y anatomía, además de una cantidad sustancial de cursos especializados en enfermería, como fundamentos básicos de la enfermería, cuidado de adultos y niños, y farmacología, entre otros. Además, en Puerto Rico, la Ley para regular la práctica de la enfermería en el Estado Libre Asociado de Puerto Rico, según enmendada, Ley Núm. 9 del 11 de octubre de 1987, 20 LPRA sec. 203(e)(3), explica que un enfermero graduado de un programa de grado asociado

> [e]s la persona que colabora y participa en la planificación y ejecución del cuidado directo de enfermería a pacientes hospitalizados y ambulatorios. Utiliza sus habilidades y destrezas básicas de enfermería fundamentado en un conocimiento de las ciencias naturales y de la conducta humana. Participa en actividades relacionadas con la salud de la familia y de la comunidad y puede prestar sus servicios por contrato con agencias o personas siempre y cuando ejerza bajo la dirección y supervisión de la enfermera o del enfermero generalista o especialista.

Según esta definición, los enfermeros graduados de un programa de grado asociado participan en la planificación del cuidado del paciente. Además, llevan a cabo cuidado directo de enfermería. Queda demostrado que los enfermeros graduados de un programa de grado asociado necesitan tener conocimiento avanzado y educación especializada para poder ejercer sus funciones. Aunque los enfermeros responsables del cuidado directo de los pacientes son los especialistas y los generalistas, el enfermero con grado asociado también tiene un rol activo en la planificación y en la ejecución de los cuidados de los enfermos. Esto a diferencia de los enfermeros prácticos quienes realizan actos selectivos, no poseen los conocimientos requeridos a los enfermeros graduados de un programa de grado asociado y trabajan bajo las órdenes de los enfermeros graduados de bachillerato y de programas de grado asociado. 20 LPRA sec. 203(e)(3). De esta forma, los enfermeros prácticos no participan de manera directa en la planificación del cuidado de los pacientes como lo hacen los enfermeros graduados de programas de grado asociado. Ley Núm. 9 del 11 de octubre de 1987, 20 LPRA sec. 203(e)(4).

El 31 de diciembre de 2015 se aprobó una nueva Ley para regular la práctica de la enfermería en Puerto Rico, Ley Núm. 254-2015, 20 LPRA secs. 204 et seq. Esa ley comenzó a regir 6 meses luego de su aprobación, según surge de la misma ley. Art. 28 de la Ley 254-2015(2015 (parte 3) Leyes de Puerto Rico 2407-2408). Sin embargo, el

proceso de arbitraje comenzó en el mes de marzo de 2015, por lo que aplica la ley de 1987. Esta nueva ley define de forma similar pero más detallada lo que es un enfermero graduado de un programa de grado asociado, por lo que de esta forma no se altera el que se sigan considerando como profesionales.[2] Además, la nueva ley incluyó una

_____

[2] Ley Núm. 254-2015, 20 LPRA sec. 204(f), define enfermero con grado asociado como la

> [p]ersona que posee un grado asociado en enfermería de una institución de educación superior autorizada y reconocida por la Junta y licenciada por el Consejo de Educación de Puerto Rico y que posee una licencia otorgada por la Junta, que la autoriza a ejercer dicho rol en Puerto Rico. Es la persona que colabora y participa en el cuidado del individuo a través de las diferentes etapas de crecimiento y desarrollo en escenarios de prestación de servicios de salud hospitalarios o estructurados. Realiza estimado de necesidades, planifica, ejecuta cuidado directo de enfermería y evalúa la efectividad de sus intervenciones a pacientes hospitalizados y ambulatorios. Fundamenta sus acciones en un conocimiento de las ciencias naturales y de la conducta humana, participa en actividades relacionadas con la salud del individuo en el contexto de la familia y de la comunidad. Podrá prestar sus servicios por contrato con agencias o personas siempre y cuando, ejerza bajo la dirección y supervisión de las(os) enfermeras(os) generalistas, especialistas o de práctica avanzada. Realiza las funciones y responsabilidades establecidas por la Junta Examinadora de Enfermería en su Reglamento, entre las cuales están:
>
> (1) Colabora y participa en la planificación y ejecución del cuidado directo de enfermería a pacientes hospitalizados y ambulatorios.
> (2) Participa en la recopilación, revisión y análisis de datos relacionados con la condición del paciente/cliente a la luz del historial de salud, observación, resultados de pruebas diagnósticas y plan de tratamiento médico.
> (3) Ejecuta aquellos aspectos del plan de cuidado de enfermería que le son delegados de acuerdo con sus conocimientos y destrezas, incluyendo la administración de medicamentos y tratamientos con seguridad y precisión y de conformidad con las leyes vigentes en el Estado Libre Asociado de Puerto Rico.

(continúa...)

definición más específica de lo que es una enfermera práctica. Del nuevo texto surge con especificidad las tareas que estas realizan y es claro que su trabajo no cumple con ninguna de las características de la definición de profesional.[3]

---

(4) Se abstendrá de ejercer funciones de supervisión y de alta jerarquía en administración, educación y servicios de enfermería.

(5) Realiza otras tareas autorizadas por la Junta en su Reglamento.

[3] Ley Núm. 254-2015, 20 LPRA sec. 204(g), define enfermero práctico como la

[p]ersona que posee un diploma de enfermería práctica otorgado de una institución autorizada por el Departamento de Educación de Puerto Rico, en los casos que aplique, y por el Consejo de Educación de Puerto Rico y la Junta Examinadora de Enfermería creada al amparo de este capítulo. Es la persona que realiza cuidados selectivos a individuos, que requieren habilidad y juicio propio de su preparación de enfermería, pero no los conocimientos requeridos a los enfermeros/as de práctica avanzada, especialistas, generalistas o de grado asociado y que por lo tanto, solo pueden trabajar bajo la dirección de éstos o de los médicos y dentistas autorizados a ejercer en Puerto Rico. Realiza las funciones y responsabilidades establecidas por la Junta Examinadora de Enfermería en su Reglamento, entre las cuales están:

(1) Lleva a cabo procedimientos y técnicas básicas de enfermería, relacionadas con la higiene, comodidad, alimentación, eliminación, ambulación, descanso y otras necesidades del paciente/cliente.

(2) Participa, según sea necesario, en la evaluación del cuidado ofrecido al paciente/cliente.

(3) Participa en el proceso de admisión y orientación del paciente/cliente en su unidad de cuidado.

(4) Hace observaciones significativas de la condición del paciente/cliente e informa a la/el enfermera/encargada/o al proveedor primario (médico o nurse practitioner), cambios o reacciones que impliquen progreso o deterioro en el problema de salud que presenta.

(5) Contribuye en la identificación de alteraciones al bienestar físico, mental, social y espiritual del paciente/cliente.

(6) Realiza otras tareas autorizadas por la Junta en su Reglamento.

Por otro lado, según expusimos, las partes estipularon que para ejercer la profesión de enfermería en Puerto Rico era necesario que los enfermeros graduados de un programa de grado asociado aprobaran un examen administrado por la Junta Examinadora de Enfermeros y Enfermeras en Puerto Rico. Las partes también estipularon que el Colegio de Profesionales de la Enfermería de Puerto Rico agrupa a los enfermeros con grado asociado, además, de los que tienen bachillerato. Finalmente, estipularon que los enfermeros tienen que tomar cursos de educación jurídica continua. Cabe destacar que ninguna de las partes puso en controversia las funciones que ejercen los enfermeros graduados del programa de grado asociado en el hospital.

Un análisis de todo lo anterior, nos lleva a concluir que se cumple con el segundo criterio del reglamento federal adoptado para poner en vigor el FLSA, además, de cumplirse con la excepción de profesionales instruidos. Como podemos ver, para ejercer sus funciones los enfermeros graduados de programas de grado asociado utilizan una serie de conocimientos avanzados, además de tener que emitir juicios y utilizar su discreción en la preparación y ejecución de los planes de cuidado a los enfermos. Además, el programa de grado asociado es más corto que uno de bachillerato. Contrario a lo que señaló el foro apelativo intermedio, los cursos en el área de enfermería que toman los enfermeros graduados del programa de grado asociado no

son clases básicas, sino que, como mencionamos, son cursos sustancialmente específicos en el área de la enfermería. Por otro lado, de la propia Sec. 501.001(d) del reglamento federal, supra, surge que lo importante es que esas clases sean prerequisitos para entrar a la profesión. En el caso de los enfermeros graduados de un programa de grado asociado, los cursos son necesarios para poder tomar la reválida y adquirir la licencia de enfermería. Como mencionamos, el reglamento indica que los enfermeros que necesitan licencia para practicar cumplen con los requisitos de "profesionales". De esta forma, concluimos que los enfermeros graduados de un programa de grado asociado son "profesionales" exentos del pago de horas extras.

                                  III

Nuestro ordenamiento jurídico favorece el arbitraje obrero-patronal, pues es un proceso rápido, económico y sencillo para resolver ese tipo de controversias. AAA v. UIA, 199 DPR 638, 649 (2018); H. R., Inc. v. Vissepó & Diéz Constr., 190 DPR 597, 617-618 (2014); C.F.S.E. v. Unión de Médicos, 170 DPR 443, 448 (2007). Por ello, los laudos de arbitraje gozan de gran deferencia por parte de los tribunales. U.G.T. v. Corp. Difusión Púb., 168 DPR 674, 682 (2006).

Los tribunales pueden intervenir con el laudo si el convenio o acuerdo de sumisión consigna expresamente que el caso será resuelto conforme a derecho, tal y como se

consignó en el convenio colectivo de esta controversia. Íd. En estos casos, la revisión judicial de los laudos de arbitraje se asemeja a la revisión judicial de las decisiones administrativas. Íd.; Rivera v. Samaritano & Co., Inc., 108 DPR 604, 609 (1979). La intervención judicial no se justifica por una mera discrepancia de criterio con el árbitro, pues se destruiría la esencia de los procesos de arbitraje. C.F.S.E. v. Unión de Médicos, supra, pág. 449.

En este caso, el foro apelativo intermedio erró al revocar la determinación del Tribunal de Primera Instancia, ya que estaba consignado que el convenio colectivo se iba a interpretar conforme a derecho. De esta forma, no existe razón para intervenir con la determinación del árbitro, ya que como podemos ver, esta fue conforme a derecho. Por todo lo anterior, revocamos la decisión del Tribunal de Apelaciones y determinamos que el laudo de arbitraje es válido.

Se emitirá sentencia de conformidad.


                              RAFAEL L. MARTÍNEZ TORRES
                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Unión General de Trabajadores
(UGT)

      Recurrido

         v.               CC-2017-0794

Centro Médico del Turabo,
Inc. h/n/c Hima San Pablo
Caguas

      Peticionario

SENTENCIA

En San Juan, Puerto Rico, a 17 de julio de 2019.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, revocamos la decisión del Tribunal de Apelaciones y determinamos que el laudo de arbitraje es válido.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurrió con el resultado. La Jueza Presidenta Oronoz Rodríguez disintió con opinión escrita. El Juez Asociado señor Estrella Martínez disintió e hizo constar las siguientes expresiones, a las que se unió el Juez Asociado señor Colón Pérez:

> El Juez Asociado señor Estrella Martínez disiente del dictamen mayoritario, pues los enfermeros y las enfermeras que poseen un grado asociado en enfermería tienen derecho a ser compensados y compensadas por laborar más de ocho horas diarias. Veamos.

El ordenamiento federal aplicable a la controversia ante nuestra consideración provee, a modo de excepción, que los profesionales que cumplan con los siguientes requisitos no tendrán derecho a ser indemnizados por el trabajo realizado en horas extras: (1) recibir un salario de no menos de $455 semanales; (2) ejercer labores que requieran conocimiento avanzado; (3) que ese conocimiento avanzado sea en un campo científico o erudito, y (4) que sea adquirido mediante cursos especializados y prolongados. *Fair Labor Standards Act* (FLSA), 29 USCA sec. 213; 29 CFR secs. 541.300-301. Particularmente, un profesional exento en virtud de este estatuto es aquel que ejerce consistentemente su discreción y su juicio independiente en sus labores. 29 CFR sec. 541.301(a).

Ahora bien, al aplicar estos criterios al esquema estatal de la práctica de enfermería, procede concluir que los enfermeros y las enfermeras con grado asociado no constituyen profesionales para fines de esta ley. En Puerto Rico, existen distintas categorías de enfermeros y enfermeras, las cuales se determinan a base del nivel de preparación académica y práctica. Al momento de los hechos, la ley vigente establecía que el enfermero o la enfermera especialista posee una maestría, tiene "conocimiento **sustancial**" de enfermería, ha estudiado la metodología de la investigación y goza de "la habilidad de aplicar éstos en su práctica de enfermería, fundamentados en conocimientos científicos y en su **juicio crítico**". (Énfasis suplido). *Ley para reglamentar la práctica de la enfermería en el Estado Libre Asociado de Puerto Rico*, Ley Núm. 9 de 11 de octubre de 1987, 20 LPRA sec. 203 (derogada). El estatuto provee expresamente que el especialista trabaja **independientemente**. Íd. Por otro lado, el enfermero o la enfermera generalista tiene un bachillerato, provee "cuidado **directo**" de enfermería y es "responsable de planificar, ejecutar, delegar y evaluar las acciones en la práctica de enfermería". (Énfasis suplido). Íd. Distinto a las categorías anteriores, el enfermero o la enfermera asociada posee un grado asociado, "**colabora y participa** en la planificación y ejecución del cuidado directo de enfermería" y sus servicios están condicionados a la "dirección y supervisión de la enfermera o del

enfermero generalista o especialista". (Énfasis suplido). Íd.

Como puede apreciarse, en nuestro ordenamiento hay distinciones importantes entre las escalas de enfermeros y enfermeras que inciden en los criterios de la FLSA. Ciertamente, surge del expediente que los enfermeros y enfermeras asociadas cumplen con el primer requisito, pues reciben un salario mayor de $455 semanales. Sin embargo, como expusimos anteriormente, el andamiaje laboral establece que solo podrá estar exento de compensación de horas extras aquel profesional que tenga conocimientos científicos avanzados, que haya adquirido cursos especializados y prolongados, y que ejerza consecuentemente su discreción y su juicio en sus labores. Sin embargo, los enfermeros y enfermeras asociadas no poseen una preparación académica especializada ni avanzada, por lo que no se les exige un conocimiento sustancial en la práctica de la enfermería. Asimismo, sus labores no conllevan el ejercicio de su discreción, pues trabajan en dependencia y bajo la supervisión y dirección de otros. En consecuencia, según los parámetros de la FLSA, los enfermeros con grado asociado no constituyen un profesional exento y deben ser compensados adecuadamente por las labores ejercidas en horas extras.

Por las razones expuestas, respetuosamente disiento. Debido a lo anterior, hubiese confirmado el dictamen del Tribunal de Apelaciones.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Unión General de Trabajadores
(UGT)

     Recurrido

         v.

Centro Médico del Turabo,
Inc. h/n/c Hima San Pablo
Caguas

     Peticionario

CC-2017-0794

La Jueza Presidenta ORONOZ RODRÍGUEZ emitió una Opinión disidente.

En San Juan, Puerto Rico, a 17 de julio de 2019.

Disiento por entender que los y las enfermeras con grado asociado no reúnen los requisitos necesarios para eximirlos del pago de horas extra según exige el *Fair Labor Standards Act*. 29 U.S.C. § 207(a)(1). Al respecto, el Reglamento del Departamento del Trabajo federal aplicable dispone que para ser considerado "profesional" exento se deben cumplir con los siguientes requisitos: (1) que el empleado reciba compensación no menor de $455 semanales; (2) que el empleado primordialmente realice funciones que requieran conocimientos avanzados ("work requiring advanced knowledge"); (3) que los conocimientos sean en un área de las ciencia

o aprendizaje, y (4) que sean adquiridos mediante un curso prolongado de instrucción intelectual especializada. 29 C.F.R. § 541.300(a).

En este caso, no está en controversia que los enfermeros con grado asociado cumplen con el primer requisito. Al evaluar si el segundo requisito se cumplió, resulta útil referirnos a cómo el Reglamento del Departamento del Trabajo federal nos instruye que debemos interpretarlo:

> "[W]ork requiring advanced knowledge" means work which is predominantly intellectual in character, and which includes work requiring **the consistent exercise of discretion and judgment**, as distinguished from performance of routine mental, manual, mechanical or physical work. An employee who performs work requiring advanced knowledge generally uses the advanced knowledge to analyze, interpret or make deductions from varying facts or circumstances. Advanced knowledge cannot be attained at the high school level.[4]

Al evaluar este requisito, la Opinión mayoritaria se limita a reiterar, de forma conclusoria, la descripción de las labores de los enfermeros asociados que provee la Ley para regular la práctica de la enfermería en el Estado Libre Asociado de Puerto Rico, Ley Núm. 9 del 11 de octubre de 1987, 20 LPRA sec. 203(e)(3). Opinión, pág. 9 ("Según esta definición, los enfermeros graduados de un programa de grado asociado participan en la planificación del cuidado del paciente. Además, llevan a cabo cuidado directo de enfermería. De esta forma, queda demostrado que los

---

[4] 29 C.F.R. § 541.301(b) (Énfasis suplido).

enfermeros graduados de un programa de grado asociado necesitan tener conocimientos avanzados para poder ejercer sus funciones"). La jurisprudencia federal, sin embargo, apunta a que se requiere un análisis más concienzudo al evaluar si se cumplió este requisito.

En particular, ni la Opinión mayoritaria ni el alegato que presentó el patrono peticionario ofrece un desglose pormenorizado de las labores diarias que realizan los enfermeros recurridos. Rieve v. Coventry Health Care, Inc., 870 F. Supp. 2d 856, 862 (C.D. Cal. 2012) ("The mere fact that Plaintiff is a registered nurse, however, does not end the Court's inquiry. As the *Powell* court reasoned, the [Department of Labor's] provision 'is not necessarily dispositive of the first element of that test, *i.e.,* **whether a particular nursing position has as its primary duty the performance of work requiring advanced knowledge** […] To determine whether Plaintiff is exempt as a professional, this Court must thus determine **whether Plaintiff's <u>specific work</u>** "requir[ed] advanced knowledge,' the first prong of the duties test.").

En su alegato, al plantear que los enfermeros recurridos sí realizan "funciones que requieren conocimientos avanzados", el patrono peticionario se limita a recitar las definiciones estatutarias del puesto y a enumerar los requisitos académicos exigidos para desempeñar la posición; no obstante, en ninguna parte detalla qué funciones realizan diariamente los enfermeros o cómo y por

qué estas requieren un "ejercicio constante de discreción". Alegato de la parte peticionaria, págs. 12-14. La Opinión mayoritaria también omite atender este aspecto medular. No así el Tribunal de Apelaciones, el cual al revocar la Sentencia del Tribunal de Primera Instancia que confirmó el laudo arbitral en este caso, enfatizó la necesidad de "evaluar no solo los estudios universitarios, sino **la utilización de esos estudios en el desempeño laboral que se le requiere**". Sentencia del Tribunal de Apelaciones, Apéndice, pág. 11.

Sabido es que la legislación laboral debe interpretarse de manera cónsona con la realidad y el propósito social que la inspira, es decir, del modo más liberal y favorable para el trabajador; por tanto, cualquier exclusión de beneficios a los trabajadores se debe interpretar restrictivamente. Piñán v. Mayagüez Sugar Co., 84 DPR 89 (1961). En este caso particular, el patrono peticionario no nos colocó en posición para desviarnos de esta máxima. Tal y como señaló puntualmente la parte recurrida en su alegato, el patrono peticionario omitió presentar prueba testifical o documental relacionada con una descripción de las funciones del puesto de enfermeros con grado asociado. Alegato de la parte recurrida, pág. 9. Lo anterior, unido a la manera en que el estatuto aplicable define las funciones de un enfermero con grado asociado, nos obliga a disentir del curso de acción que adopta la Mayoría. En fin, por entender que el patrono peticionario no logró demostrar afirmativamente que las

tareas principales que desempeñan los enfermeros con grado asociado requieren un "constante ejercicio de discreción y juicio independiente", disiento.


                                        Maite D. Oronoz Rodríguez
                                             Jueza Presidenta